We'll now turn to Case 19-2279, Wing Enterprises v. Tricam Industries. Mr. Miller, whenever you're ready. Thank you, Your Honor. Mark Miller on behalf of Appellant Wing Enterprises, also known as the Little Giant Ladder Company. May it please the Court, Wing is asking this Court to reverse three decisions from the District Court. The first is the summary judgment decision that was based on an alleged lack of evidence of materiality in the false advertising claim. The other two decisions excluded two surveys commissioned by Wing's expert witness, Hal Perret. It's important to view this appeal from the perspective that originally Tricam challenged the expert opinion of Dr. Bloswick, which found that Tricam bladders do not satisfy the industry safety standard under ANSI, the American National Standards Institute. They don't reiterate that challenge on appeal. They no longer raise their alleged compliance with ANSI as an alternative grounds for affirmance. So it's proper to view this appeal from the perspective, assuming that while Tricam tells consumers that they meet the ANSI standard, their ladders do not, in fact, meet the ANSI standard. With that backdrop, the fundamental error that the District Court committed was the District Court found that no reasonable jury could find that a statement about a ladder's compliance with the industry safety standards under ANSI could be material without direct evidence of actual consumer influence. That is the way the District Court applied the relevant standard. I think the better question is, how could a reasonable jury not conclude that an advertising statement that a ladder complies with the industry safety standard is material? This is Judge Taranto. Can I just begin by clarifying one thing? Are we talking here about two remaining allegedly false advertisements, or is the Gorilla.com situation still in the case, or is that out of the case? Your Honor, I think technically the Gorilla.com is only in the case for the brief period that it appeared after filing the complaint, or the brief period that it appeared until it was taken down. After we filed our lawsuit, there was a few months. I can't remember the time frame, but eventually Tricam removed both ANSI and OSHA from its own website. I think primarily the focus is on the HomeDepot.com statement and on the label statement on the side of the ladder. Those two statements both refer to some kind of combination of OSHA and ANSI. Taking as a given, which I think we have to, that it is not properly in this case, because of the magistrate judge's ruling that it was not pledged in a timely fashion, we have to accept that there's no charge in this case of falsity as to OSHA compliance. If that's right, then why is the question not the following? Was there evidence from which a jury could reasonably conclude that ANSI compliance independent of OSHA compliance would matter to consumers? I think there is, Your Honor. First of all, I don't think the HomeDepot.com statements are combined ANSI-OSHA statements. There is a line item on the website that says Certifications and Warranties, and it says ANSI certified, and then it also has a semicolon that will say OSHA compliant. Those are two separate statements, and we're only challenging the ANSI certified. I'm not seeing quite how that changes my focus. Why isn't the question whether consumers would likely be influenced on the assumption that OSHA compliance was present by an additional statement that there's also ANSI compliance? Sorry about that. I didn't mean to interrupt. No, no, please go on. The evidence is this. There is evidence in the case that consumers understand what ANSI is as an industry safety standard, and whether or not there's OSHA compliance, if consumers consider compliance with industry safety standards important, and they find that one latter will not comply with ANSI, then that is enough for a jury to reasonably conclude that that can have an impact on consumers. TRICAM's president, Jeff Skubick, testified they would never market a latter without ANSI compliance. That's undisputed, and it's because he said if consumers are going to compare latters, we want them to know we comply with ANSI. He didn't say I would never market a latter that wasn't OSHA compliant, and it's because in the industry it's also undisputed. The general practice is the only way these latter manufacturers comply with OSHA is they comply with ANSI and rely on ANSI to do so. Whether or not it's technically or theoretically possible to comply with OSHA without complying with ANSI, the overwhelming evidence is that in this industry, latter manufacturers rely on ANSI compliance to label a latter as OSHA compliant, and there is no practical... This is Sharon Prowse. I'm not clear on what manufacturers rely on, how that translates to what consumers rely on. There were survey results from Dr. Triess, and his statistics show that there was very little, if any, awareness of what ANSI is on behalf of consumers. So what you're talking about in terms of statements by manufacturers in terms of what they care about, I'm not sure I'm seeing how that translates to what consumers would recognize. Let me address both of those points. First, Dr. Triess's survey does show a significant number of consumers recognize ANSI and understand what ANSI is. That is the data from her survey. It also demonstrates that a high percentage of consumers will read the side label of a latter and remember that the side label will indicate compliance with safety standards. To the other point you raised, the law recognizes that you can prove a likelihood of consumer influence with indirect circumstantial evidence. It doesn't have to be direct evidence of actual influence. This court's decisions as well as Eighth Circuit decisions will recognize that the manufacturer's intent, if the intent in the advertisement is to influence consumers, a jury is allowed to infer from that that it's likely to do so. That's where the evidence is relevant. If the industry itself, for example, Mr. Verhalen was the head of the labeling committee for ANSI. He said that the purpose of the ANSI standards requirement, that ANSI compliance be on the label, is for consumer notification. That's the purpose the industry put in the standard. It's not just that you comply with it, but you have to label it as compliant for purposes of notifying consumers. And Mr. Skubik said, if consumers are going to compare our products to our competitors who comply with ANSI, we want it there. If you've ever been on HomeDepot.com, you can click, I want to compare a Little Giant Ladder to a Gorilla Ladder to a Werner Ladder, and then you can scroll down and compare all of the different line items of the specifications of these ladders. And one of those line items is certification. And if a consumer sees ANSI certified on one and there's no ANSI certified on the other, that could influence consumer decisions. And the fact that TRICAM, with its decades in the industry, feels that that's important enough that they would never market a ladder without ANSI, that supports an inference that consumers are likely to be influenced. And that's the important part of that standard. And the federal law around the country, the vast majority recognize that in some cases, some cases you can show materiality by reference to the nature of the accused statement itself and the context of the product being advertised. And that is what we have in this case. Counselor, this is Judge Ray. I hate to interrupt you here, but I want you to go back to the testimony or the opinion of Dr. Treacy. And in your brief, page 19, you have specifically 87% of ladder shoppers consider the information, and you have other data. And then it says D, 61.7% clearly knew what OSHA does, 42.4% have heard of ANSI, and 21.9% clearly knew what ANSI is. It seems to me that since this was presented as rebuttal, that if you're going to start comparing these different surveys, you've done more than enough to raise a genuine issue of material fact. Can you tell me what the basis of the district court was to determine that that particular survey data did not present a genuine issue of material fact? Actually, that's one of the problems, is once the district court, in the district court's opinion, once it got through Mr. Perret's surveys and excluded them and proceeded to address the additional evidence of materiality we presented outside of Mr. Perret's surveys, the district court never acknowledged Dr. Treacy's survey as part of that evidence. The district court didn't even acknowledge that we had raised that as independent evidence of materiality, which is one of the errors we ascribed to the district court in our briefing. I heard the tone that I'm into my rebuttal time. If there's no other questions, I'll reserve the rest for rebuttal. Thank you very much. Let's hear from the other side. Mr. Chadwick. Thank you, Your Honor. May it please the court. I'm counsel for Tricam Industries. Even giving all reasonable inferences here, there's no evidence of materiality, and the court didn't abuse its discretion in excluding Perret or granting summary judgment. It didn't commit error. I think it was Judge Reyna just asked about Debbie Treacy's survey that was cited by Wing that a certain number of people knew what ANSI was, and the question was, why doesn't that create an issue of fact? The issue there, or the problem with that is, the survey that Dr. Treacy performed never showed any of the alleged false statements, and materiality is clear in the Eighth Circuit. 3M says this. It's reiterated in Porus v. Paul that you have to look at the misleading statements themselves, and that has to be what is material to consumers. So the fact that consumers might know something about ANSI or might know something about OSHA isn't material to whether or not the actual statement would likely be material to their purchase decision. And that's why the court was right to not look at the Treacy report as creating an issue of fact that would preclude summary judgment. Was there not evidence that consumers look to ladders and consider safety information in that regard? The evidence from her was that consumers said they looked at the side of a ladder, and they recalled certain issues, safety, weight rating, and so on and so forth. But again, if we look at the details of her survey, which Wing didn't get into, what she said was, I think the number was 1 or 2 percent recalled ANSI. So using a proxy here of safety, which is what Wing wants to do... It says 42.4 percent have heard of ANSI, and 21.9 clearly knew what ANSI is. But that's just as to what they know ANSI is. The issue still remains that safety considerations is central to a consumer's buying decision. I think that's what some of the polling surveys show as well. Right, Your Honor. And the issue, we're right on the nub of the issue here. The question to be asked on materiality is not... Excuse me. So we're at the nub of the issue, and I agree. But you have one survey that distinctly divides data by OSHA and ANSI. And the other survey, the poll surveys were found to be irrelevant because it didn't make that type of a divide. Its data was to both OSHA and ANSI combined. But this other survey does make a clear division. And when you put those together, and one is offered up as rebuttal against the other, isn't there a genuine issue of material fact at play? No, Your Honor. No, there's not. And the reason why is that 3M says we need to know if the actual misleading statement itself would likely influence purchasers. Dr. Treacy never showed that to purchasers. So we don't... What we're doing here, and what Wing has done quite well, I think, is to argue a proxy for the actual statement. They've moved away from the statements, and they said, well, it was about safety. And everybody cares about safety, so it's material. And that's not what the law requires. The law requires that you look at the specific misrepresentation and ask if that is material to consumers. And nobody ever did that in this case. This is Joe Stronto. Can I ask you this question, focusing just on the importance survey? The importance survey asked, and I think got a pretty substantial positive response, as one would expect, basically whether consumers care about compliance with industry safety standards. I think I've got the language right. There's only one industry safety standard, ANSI. Why isn't that survey enough to establish that consumers are likely to be influenced by compliance with ANSI standards? Well, your Honor, I don't think it's accurate that there's only one industry safety standard. Wing itself has called OSHA an industry safety standard in its briefing. They also refer to the CSA, which I believe is the Canadian Safety Association. Yeah, but we can restrict it to the United States, can't we? Fair enough, but you've still got OSHA and ANSI. And really, would one call a government regulation an industry safety standard? Yes, I think they would. And as I said, Wing did so in his briefing at the District Court. But was that at the same time as, and basically before Wing woke up to the fact that the OSHA regulations don't keep up to date with ANSI changes, and therefore Wing was still conflating OSHA standards with current ANSI standards instead of 1956 and 1977 versions? Yeah, I don't recall, Your Honor, exactly when they said that. And I'm not certain when it is that they became aware of the problems in terms of incorporation by reference of ANSI. But if a survey says, I mean, if I think of what I care about with a ladder, I care about the height, but you don't need anybody to tell you about that. And I care about whether the footing is going to slip. And then I care about whether my footing is going to slip. Everything else pales in comparison. So there can't be any possible doubt that safety of footing is material to a consumer's purchase of ladder. And so you need to make a distinction between safety of footing and the particular assertions of ANSI compliance. Why doesn't the importance survey create a jury question on that? Because the issue is, does the actual statement matter to consumers? And what we're talking about in the importance survey is something else. It's a level of abstraction higher. It's talking about safety. No, no, no, I'm sorry, it's not. Do I have the language wrong? I thought it asked the question, compliance with industry safety standards. And so far we've talked about two possible ones within the domestic United States, ANSI and whatever version of ANSI OSHA currently has in its regulations. There's two possibilities. Why isn't it a jury question whether compliance with industry safety standards, which the survey shows consumers care about, is enough to support an inference that they care about the ANSI safety standards? Because what we did by doing that is we have rendered the actual statements themselves meaningless. We're not looking at the actual statement on the side of the ladder. We're not looking at the ladder statement in context, that it's in seven-point font, that it's a half inch at best on a 40-inch label, that it's oftentimes covered up, that people may never see this. All of that stuff that you just mentioned was not the basis for the district court's conclusion, was it? Well, the district court was a little light in explaining why it excluded that. But I think what it said was that the important survey was excluded because Mr. Port didn't ask the key question, is I think what the court said. And the key question is the point that I'm making. Right. Can I just ask you about that? Sufficiency of the evidence to create a jury question is a separate question from meeting the How could it not be relevant under the literal rule 401 definition of relevant? Relevant to the ultimate we care about ANSI question that we care about compliance with industry standards. 401 says a fact is relevant if it makes the point that you are trying to make more likely than it would be without that fact. Why doesn't that particular one squarely cover the importance survey question? It is more likely that people care about ANSI standards with evidence that they care about industry safety standards than it would be without evidence that they care about industry safety standards. Your Honor, I think the problem that TRICAM has with that line of argument is that it is contrary to 8th Circuit law. The 8th Circuit clearly says you have to look at the actual statement. I'm sorry, but the summary judgment standard of course looks at the ultimate statement. But the exclusion standard under 401 does not necessarily. I don't think it's helpful to a jury when the legal standard is does that statement matter to consumers to not ask about the statement and to effectively render the statement itself meaningless and then say, well, people care about safety. Who can argue against that? What you've done is just done an end run around the law that is a requirement that you have to look at the statement. And so if you want to say that Mr. Porath's importance survey was relevant, then you've just allowed him to avoid what the law requires. Can I just change subject and just ask you this question, which is a kind of global question? Suppose Wing starts putting out advertisements that say the gorilla ladder doesn't meet the current ANSI standard for ladder steps. Do you have a Lanham Act cause of action? I'd probably have to know more, but I would assume that we would. Why? That wouldn't be material in your view, would it? Well, you ask if we have a cause of action, and we would have to determine if there was materiality by either getting consumer survey or consumer testimony or an admission by Wing that that's material. But your position in this case is that that's not material, isn't it? Because there's no evidence to demonstrate that it's material, Your Honor. The cases all talk about 3M itself said the case 3M was this new, they called it a new technology, and it wasn't new at all. It was only applied new to a different polymer. And there was a customer that was deposed, and they didn't ask if it was material. The plaintiff and the defendant both testified that they didn't know if it was material to consumers. And the court didn't say. Well, that's different in this case. Let's look at 3M Innovative. There the court held that materiality considers whether the false or misleading statement is likely to make a difference to purchasers. Here, the false or misleading statement is that Primex is putting the certification of a standard on its ladder, ANSI or ORO. We can stick with ANSI. And the question is, well, that makes a difference to purchasers. And I think both the importance survey and Dr. Treatise's survey set up a genuine issue of material fact as to whether the statement that this is ANSI compliant makes a difference to purchasers. There's evidence in the record that supports both sides. And I didn't catch the name of the case, Your Honor. Which case was that? I'm talking about 3M. Oh, okay. Sure. Sure. Thank you. The statement that you made when you let off that question was whether or not the false or misleading statement is likely to influence consumers. And I feel like... No, it's likely to make a difference to purchasers. Right. And my point is, you have to ask consumers about that statement. You can't divorce the materiality argument from the statement itself. And you can't label it an inherent quality or characteristic. You can't have a proxy calling it safety because you then define what the statement is, and you then can make it so that, of course, somebody would care about that. Yeah, let's look back at Dr. Treacy's survey. Specifically, 87% of ladder shoppers consider the information on the side label as important to purchasing a ladder. And then we go down, 61% knew what OSHA does, 42.4% have heard of ANSI, and 21.9% clearly knew what ANSI is. So that's evidence that consumers are likely to make... that safety information is likely to make a difference to purchasers under 3M. I disagree, Your Honor. I think that there are different issues. If you look at the Treacy survey, she says 87% of people look at the side of the ladder, but we don't know what they look at. And what we're talking about here is 7-point font. And we're going to say, because you... Where are these labels located? On the side of the ladder on a 40-inch long label. Well, you have 87% of ladder shoppers that consider the information on the side label important to purchasing a ladder. I mean, they may consider color and, you know, a bunch of other information, but we do know that that's, as you just said, that's where the ANSI label is. If I could respond, Your Honor. Yes, please respond, please. Sure, thank you. We can't dispute that the report says that people look at the side ladder, but the issue isn't whether they look at the side ladder and whether the side of the ladder is material to them. The issue is whether this tiny statement in the middle of the side ladder label influences them. And merely because they... Why isn't that a question for the jury, then? Because the burden... They have to consider this information, consider attorney arguments, and make a decision whether the size or the placement of the label makes a difference to the consumer. Yeah, and I think the answer is because the case law clearly says you have to look at the statement so we don't get into this exact issue that we're in right now, which is not consistent with Eighth Circuit law. Anything else? No, thank you, Your Honor. Okay, let's hear from the other side's remaining rebuttal. Thank you, Your Honor. First, I want to point out my colleague's argument that Eighth Circuit law clearly requires any expert survey to only test the exact advertisement issue or be deemed irrelevant is not the law. Neither 3M nor any other Eighth Circuit case does that. There's... In fact, the law is that an expert survey can provide circumstantial evidence of materiality. It doesn't have to test the verbatim accused statements to be relevant. There's no law that supports that. So the relevance comes from Rule 401. Rule 401 is any tendency to make something more or less probable. And it's interesting that TRICAM only talks about TRISE survey and Peretz importance survey independently in different areas of their brief, and then they argue that there's no evidentiary link between that survey and the facts of the case when the evidentiary link is the other survey. And so TRISE... I'm sorry. The other survey? What do you mean by that? For example, if I... I'm sorry. There are three surveys here. Two of them are Peretz, importance and labeling, and then there's this TRISE thing. The judge here said as to the labeling survey, among other things, although it's a single sentence,  I'm not sure how exactly that's an abuse of discretion. Even though Rule 403 was not cited, you can get to confusion and prejudicial for the labeling survey by virtue of the helpfulness requirement of 702, which was cited. So don't you have to rely on either the importance survey or these bits of non-survey evidence? I don't think so. No, I think, one, we can rely on the alleged statements themselves under the law that says one way to prove materiality is to demonstrate that the statement relates to inherent qualities or characteristics of a product, and when that quality... But why would one... I certainly... Even assuming that safety of footing is an inherent quality, that's not the issue. The issue is whether compliance with ANSI independent of OSHA compliance is likely to influence consumers, and I don't know how to make that into something called an inherent quality unless inherent quality is a meaningless term. Well, what you have to have is you have to have evidence that consumers are going to see the ANSI statement and recognize that as a statement of complying with safety standards, and the evidence we have for that is Dr. Treese's survey demonstrates that a substantial number of consumers understand that ANSI is a safety standard. We also have the context. The district court even recognized that the context of the statement on the label would suggest... Just by how it's written, it says, manufacturer certifies conformance to OSHA ANSI A14.2 standard for metal ladders. Just the nature of the statement itself could support the idea that a consumer is going to read that and say, that must be a safety standard, and so that evidence suggests that a consumer will consider it important, and then if you combine that with the importance survey, the reason the importance survey is relevant is because a natural question that flows from this other evidence is, well, how do we know consumers consider a safety standard important? Just because they recognize ANSI as a safety standard doesn't mean they consider safety standards important. That's why the importance survey is plainly relevant. Can I just ask this question? Tell me why the following framing of the issue is wrong, that the issue is if consumers see and understand that the ladder complies with OSHA, they nevertheless still would care whether it complied with ANSI. If that's the framing, it seems to me you have a difficult time, and tell me why that's an improper framing of the question. So the consumer says, oh, the government says this is okay. Do I really care about what some other body says? Your Honor, the reason that's the wrong framing is because the materiality question is not whether the accused fault statement is likely to be the only thing that influences consumers. Just pointing out that there are other things in their advertising that could have an influence on consumers does not negate the idea that one of the accused statements can likely influence consumers. There is no law that says it has to be the driving force. It doesn't even have to be the primary influence. The likelihood of influencing consumers can be attributed to a fault statement, even if other factors that are advertised might also bear an influence on their purchasing decisions. That's why that's the wrong framing, is that's not the legal standard of materiality. It's very similar to a likelihood of confusion in the trademark context. You don't have to prove a negative of all other aspects of the advertising in order to demonstrate that the accused statement can have an influence. Can I just ask you a side question, which is neither here nor there on the issue before us, but does that then affect damages in the damages calculation? I mean, it would seem it would have to matter. Perhaps you're right not for materiality, but it would seem it would come into play in some aspect of the case. Am I right about that or not? I'm not certain now. I do believe I have seen cases where the question of causation of damages and the question of materiality is often analyzed together. I have seen that, but I'm not certain as to whether it is a necessary or a determinative point in damages at this point. In this case, the relief you're seeking is what, injunction, damages, disgorgement of Tricam's profits or what? We are seeking injunctive relief and disgorgement of profits under the Lanham Act. We are not seeking lost profits damages. Anything else, judges? No, thank you. All right. Thank you, Mr. Miller. We thank both sides and the case is submitted. That concludes our proceedings for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.